```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF ALABAMA
                     SOUTHERN DIVISION


JAMAEL AARON NETTLES,              :

     Petitioner,                   :
                                            CIVIL ACTION 08-0329-CG-M
v.                                 :
                                          CRIMINAL ACTION 06-00005-CG-M
UNITED STATES OF AMERICA,          :

     Respondent.                   :
```

REPORT AND RECOMMENDATION

Pending before the Court is Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Docs. 109-10). This action was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b) and Rule 8(b) of the Rules Governing Section 2255 Cases.[1] It is now ready for consideration. The record is adequate to dispose of this matter; no evidentiary hearing is required. It is recommended that Petitioner's Motion to Vacate (Docs. 110-11) be denied, that this action be dismissed, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner Jamael Aaron Nettles.

Nettles was indicted on January 26, 2006 for possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1) (Doc. 1). On March 31, 2006, a superceding indictment

---

[1] The Hon. Callie V. S. Granade was the district judge who presided over the jury trial of this action and imposed the challenged sentence.

charged Petitioner with the following:  two counts of possession with intent to distribute crack cocaine (counts one and four) in violation of 21 U.S.C. § 841(a)(1), possession with intent to distribute cocaine (count two) in violation of 21 U.S.C. § 841(a)(1), possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(b)(1)(D), and using, carrying, or possessing a firearm during and in relation to a drug trafficking crime (count five) in violation of 18 U.S.C. § 924(c) (Doc. 36). During the trial, a motion to dismiss the firearm possession count (count five) was granted (Docs. 44-45).  At the conclusion of Nettles's trial, he was found guilty of counts one and two, found guilty of a lesser-included offense in count three, and found not guilty of count four (*see* Doc. 49).  Judge Granade sentenced Petitioner as follows:  365 months on count one, 240 months on count two, and 12 months on count three, to run concurrently; four, three, and one years of supervised release, respectively, to run concurrently with a special condition that Nettles participate in a program of testing and treatment for drug and/or alcohol use as directed by the Probation Office following his release from prison; and an assessment of two hundred, twenty-five dollars ($225.00) (Doc. 68).

    Represented by new counsel, Nettles appealed his conviction (Docs. 63, 69) which was affirmed by the Eleventh Circuit Court of Appeals (Doc. 99).  On April 21, 2008, Petitioner filed a Motion for Retroactive Application of the Sentencing Guidelines

to Crack Cocaine Offense (Doc. 102); on June 4, 2008, Judge Granade reduced Nettles's sentence for crack cocaine from 365 months to 293 months (Doc. 108).

Petitioner filed his Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 on June 9, 2008 in which he raised the following claims:  (1) Newly discovered evidence shows that he is actually innocent of the crimes for which he was convicted; (2) the government suppressed evidence from him; and (3) his trial and appellate attorney rendered ineffective assistance in that they failed to do the following:  (a) investigate all available information regarding his case; (b) proffer a particular witness for testimony at his trial; (c) honor Petitioner's willingness to plead guilty to the charged crimes; and (d) appeal the drug quantity calculation which had been found by the Court, using a preponderance of the evidence standard (Docs. 109-10).  Respondent filed a Response (Doc. 119) to which Petitioner Replied (Doc. 120).

Nettles's first claim is that newly discovered evidence shows that he is actually innocent of the crimes for which he was convicted.  More specifically, Petitioner asserts the following:

> During the preliminary hearing in the case
> against Darrius A. Lane, whom was indicted
> for the murder of Travis Davis, a police
> investigator testified in Mobile County
> District Court that three gunmen broke into
> Nettles' (Movant) home, shot him and killed
> his nephew, Davis, then left large amounts of
> cocaine, marijuana and cash around in an

3

effort to frame Nettles for drug trafficking.

(Doc. 110, p. 11).  Nettles states that this evidence came from a newspaper article which he has presented to the Court (*see* Doc. 111, Exhibit 3).

The U.S. Supreme Court, in *Schlup v. Delo*, 513 U.S. 298, 327 (1995), has stated that, to establish actual innocence, a petitioner must present evidence which "must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."  In other words, Petitioner must persuade this Court, "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."  *Schlup*, 513 U.S. at 329.

Respondent has provided the transcript of the preliminary hearing which the newspaper article discussed (Doc. 119, Exhibit A).  In that transcript, Detective Tommy Stewart, with the Mobile Police Department, testified that he was investigating the homicide of Travis Davis which occurred at the home rented by Defendant Nettles (Doc. 119, Exhibit A, pp. 4-5, 54).  Stewart's testimony, generally, was that his understanding of what happened is that three masked figures forced their way into Nettles's home and stole some money and keys before fleeing; during the course of the home invasion, one person was shot and killed while Nettles was shot (Doc. 119, Exhibit A).  The police were called to the scene and found drugs inside and outside of the house upon

arrival.  Stewart testified about a conversation he had with Nettles about the drug which will be set out herein in full:

> Q.  Did Mr. Nettles say that any drugs were taken from the residence or did he know?
>
> A.  We did ask him about the drugs initially during our interview.  And he stated that they came in, speaking of the three subjects, came in carrying a bag, a black bag, possibly a duffel bag or a backpack, I think is the way he described it.
> His theory was that they came in. That they were planting the drugs in the house that was there.  And that – I asked him why that was and he stated that in the streets like that, that when drugs are planted and large amounts found like that, the police wouldn't normally work too hard to solve the case or something to that effect.
>
> Q.  Well, Mr. Nettles says that there was perhaps no cocaine or crack at the residence at the time the robbery started, but then the perpetrators brought crack in to kind of poison the scene?
>
> A.  That's what he said, yes.

(Doc. 119, Exhibit A, p. 26).  The Court has considered this passage very carefully and has failed to come to any sort of understanding as to how Stewart's testimony establishes Petitioner's innocence.  In his statement, Steward has only testified as to what Nettles told him had happened.  This is not even new evidence.  The Court finds that Petitioner has failed to "show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt" as required in *Schlup*.  This claim is without merit.

5

Nettles's second claim is that the government suppressed evidence from him.  This claim is based on the factual assertions of the previous claim, reformed to assert that the prosecutor withheld information within its possession which kept Petitioner from getting a fair trial (Doc. 110, pp. 14-17).

In *Brady v. State of Maryland*, 373 U.S. 83, 87 (1963), the U.S. Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  The Eleventh Circuit Court of Appeals has delineated the showing that must be made by stating that "[a] *Brady* violation occurs where:  (1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant; and (3) the evidence was material to the issues at trial."  *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990), *cert. denied sub nom. Stano v. Singletary*, 516 U.S. 1122 (1996) (*citing United States v. Burroughs*, 830 F.2d 1574, 1577-78 (11th Cir. 1987), *cert. denied sub nom. Rogers v. U.S.*, 485 U.S. 969 (1988)).  The *Stano* Court went on to say that "[s]uppressed evidence is material when 'there is a reasonable probability that . . . the result of the proceeding would have been different' had the evidence been available to the defense."  *Stano*, 901 F.2d at 899 (*citing Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987) and *quoting United States v. Bagley*, 473 U.S. 667, 682 (1985) (plurality

opinion of Blackmun, J.)).

The Court has already reviewed the evidence on which Nettles relies in making this claim. The Court finds that Petitioner has failed to show that any evidence was suppressed. Nettles essentially relies on Detective Stewart's testimony of Nettles's own theory of how the drugs came to be on his property. The evidence was not suppressed if Petitioner was the one who originally espoused the idea. Additionally, Petitioner has not shown a reasonable probability that the results of his trial would have been any different if the evidence had been presented to the jury. The Court finds that Nettles has failed to satisfy the threshold of *Brady* or the analysis of *Stano*. This claim is of no merit.

Nettles has also claimed that his trial attorney rendered ineffective assistance. In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court defined the showing a habeas petitioner must make to prevail on an ineffective assistance claim:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the sixth amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be

7

>said that the conviction . . . resulted from
>a breakdown in the adversary process that
>renders the result unreliable.

*Id*. at 687.  In *Evitts v. Lucey*, 469 U.S. 387 (1985), the United States Supreme Court extended *Strickland* to the appellate level, stating that "[a] first appeal as of right therefore is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney."  *Id*. at 396.

Nettles claims that his trial attorney rendered ineffective assistance in that he did not investigate all available information regarding his case.  This claim is based on the factual assertions made in Petitioner's actual innocence and *Brady* claims and has been resurrected under the ineffective assistance of counsel umbrella (Doc. 110, pp. 14-17).  Those claims were found to be without merit and this claim gains no new life here as Nettles has failed to demonstrate any prejudice whatsoever.

Petitioner next claims that his trial attorney failed to proffer a particular witness for testimony at his trial.  Nettles has asserted that his attorney should have called Detective Stewart to testify (Doc. 110, pp. 18-20).  Again, as Stewart could have only testified as to Nettles's own theory of how the drugs were planted at the crime scene, this claim lacks merit for want of a showing of prejudice.

Petitioner next claims that his trial attorney rendered ineffective assistance in that he did not honor his willingness to plead guilty to the charged crimes (Doc. 110, pp. 7-10). Nettles also proffers the affidavit of his attorney, Joe Carl "Buzz" Jordan who stated the following regarding a settlement offer that had been made:

> In my opinion, Jamael Nettles probably would have plead guilty. However, because of my interpretation of the facts of the case, and perhaps because I may have lost my objectivity regarding his case, in my opinion, I essentially did not give Mr. Nettles the opportunity to plead guilty. In my opinion, upon review and in retrospect, I essentially made the decision to go forward with Mr. Nettles' trial. Upon reflection, contrary to my own thoughts and opinions regarding his case, I should have honored Mr. Nettles' desire to plead guilty and I should have entered into and completed plea negotiations on behalf of Mr. Nettles.
> Upon reflection, it was Mr. Nettles' desire to plead guilty against his counsel's advice, and his counsel should have honored that desire.

(Doc. 111, Jordan Affidavit, ¶¶ 5-6).

The Court notes that Mr. Jordan's admission "that his performance was deficient matters little." *Chandler v. U.S.*, 218 F.3d 1305, 1315 n.16 (11th Cir. 2000), *cert. denied*, 531 U.S. 1204 (2001) (*citing Tarver v. Hopper*, 169 F.3d 710, 716 (11th Cir. 1999)). The ineffectiveness of an attorney is a question that must be decided by the Court. *Atkins v. Singletary*, 965 F.2d 952, 960 (11th Cir. 1992), *cert. denied*, 515 U.S. 1165

9

(1995).

The Court further notes that Mr. Jordan laid the groundwork for this claim at Nettles's sentencing hearing before Judge Granade when the following exchange took place:

> THE COURT: All right. Mr. Jordan, I'll hear from you if you want to say something on behalf of your client.
>
> MR. JORDAN: Judge, I was probably ineffective in this case. My client wanted to plead guilty. Based on what he told me, I wouldn't let him plead guilty. Originally he was charged with the amount of crack cocaine, count one, and we didn't plead guilty. Then we got indicted on superseding indictments which added some things. I had problems with those things and I knew the facts of the case and I knew what had happened to him in the home invasion.
> I don't like trying cases in federal court because the penalty ranges are just too risky. Federal courts don't accept a best-interest plea. The government would not reduce the amount of crack that I thought, you know, we could live with, which the jury found him – in fact, after we tried the case, the jury found him guilty of. So we actually got what we had hoped to get by trying the case. But then, of course, after you try the case, you get destroyed by all the other things that come in. So it's really – I feel I've done a disservice to my client. And he's 19. Graduated from high school, which was a big deal to him. Had a child, which was a big deal to him. Has a great little girlfriend. Took Travis in. I know Your Honor sees it one way. But Travis had nowhere to go, Travis had no family. Travis would be on the street if little 19-year-old Jamael who buys – who rents this house, a dumpy house, and fixes it up into –
>
> THE COURT: Travis would be alive if 19-year-old Jamael wasn't dealing in crack

>   cocaine and allowing his little cousin to stay there where people are going to come in and rob them and shoot them up.
>
>   MR. JORDAN:  Judge –
>
>   THE COURT:  So I'm not going to – I'm just telling you, Mr. Jordan, that does not impress me as an argument.
>
>   MR. JORDAN:  Judge, it could be – but it could be just the opposite of what you just said.
>
>   THE COURT:  It could be.  But the facts are that Mr. Nettles was dealing in crack cocaine, which led to the very dangerous situation that he put himself in and his girlfriend, his two-year-old child, and his 15-year-old cousin.
>
>   MR. JORDAN:  That's all I have, Judge.
>
>   THE COURT:  I will say, Mr. Jordan, that I don't think your representation of Mr. Nettles was ineffective.  I think you did a great job during the trial and, from what I observed, put on a creditable – maybe not a credible, but a creditable – defense.  But you can't change the story that your client is telling.  So I disagree with you when you say that you've done your client a disservice.
>   Now, it was his decision, not yours, as to whether or not he went to trial.  And so I'm not going to let you pull that story in an attempt to get a 2255 for him later.  Because I think you did a fantastic job representing him.
>   But he is in a very difficult situation right now.  But he made that choice by the lifestyle that he chose to live.  And so I can't say that it's at all attributable to you.  I think the record needs to reflect that.

(Doc. 82, pp. 16-19).

As shown herein, Judge Granade has already indicated that Petitioner's attorney cannot be held responsible for Nettles's failure to plead guilty.  The Court would further note that Petitioner's assertion, in this petition, that he is actually innocent of the crimes for which he has been convicted belie his attempt to assert that his attorney was deficient for not letting him plead guilty.  Nettles has brought forth nothing that would change the Court's opinion in this matter.

Nettles has also claimed that his appellate attorney rendered ineffective assistance in that he did not appeal the drug quantity calculation which had been found by the Court, using a preponderance of the evidence standard.  The claim, in its simplest terms, is that the Court improperly transformed the $20,000 cash found in his bedroom into an equivalent amount of crack cocaine for sentencing purposes and enhanced his sentence accordingly and did so using a preponderance of the evidence standard rather than that of guilt beyond a reasonable doubt (Doc. 110, pp. 3-7).

The Court notes that the Eleventh Circuit Court of Appeals has held "that money attributable to [] drug transactions may be converted to the equivalent amount of drugs for purposes of determining the drug quantity."  *U.S. v. Tokars*, 95 F.3d 1520, 1542 (11th Cir. 1996), *cert. denied*, 520 U.S. 1151 (1997).  The Eleventh Circuit Court of Appeals, in *U.S. v. Chau*, 426 F.3d 1318 1323-24 (11th Cir. 2005), held that "'the use of extra-verdict

enhancements in an advisory guidelines system is not unconstitutional.'" *Chau*, 426 F.3d at 1323 (*quoting U.S. v. Rodriguez*, 398 F.3d 1291, 1301 (11th Cir.), *cert. denied*, 545 U.S. 1127 (2005)); *see also U.S. v. Booker*, 543 U.S. 220 (2005). *Chau* also upheld the use of these enhancements by a preponderance of the evidence standard. *Chau*, 426 F.3d at 1324.

Nettles has not shown that the Court made any calculation errors in sentencing him. As such, Petitioner has failed to demonstrate that his appellate attorney's performance was deficient in not challenging his sentence calculation. Nettles's claim otherwise is without merit.

Petitioner has raised four particular claims in asserting that his trial and appellate attorneys rendered ineffective assistance. None of those claims have merit. Nettles has raised a total of three claims in bringing this action. None have merit.

Therefore, it is recommended that this petition be denied, that this action be dismissed, and that judgment be entered in favor of the Respondent, the United States of America, and against Petitioner Jamael Aaron Nettles.

> MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
> AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
> <u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.  **<u>Objection</u>**. Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the

district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed <u>de novo</u> and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this 1st day of July, 2009.

s/BERT W. MILLING, JR.  
UNITED STATES MAGISTRATE JUDGE
